**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JAMAR LELAND,

    Plaintiff,

vs.                               Case No. 4:06cv569-SPM/WCS

SERGEANT B. PARRAMORE,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a *pro se* inmate, filed an amended civil rights complaint, doc. 23, and service was directed. Doc. 26. An Answer was filed on August 20, 2007, doc. 29, and a special report filed on October 8, 2007. Doc. 38. Plaintiff was advised as to his obligation under Rule 56 in responding to the motion, doc. 39,[1] and given additional time to do so. Docs. 42, 45. Plaintiff filed his opposition to Defendant's summary judgment motion on December 12, 2007. Doc. 46. The motion is ready for a ruling.

**Plaintiff's allegations, doc. 23**

Plaintiff was being held in the Leon County Jail when this case was initiated. Doc. 23, p. 2. The only Defendant in this case is Sergeant Parramore, who worked at

---

[1] Plaintiff was simultaneously given an opportunity to submit discovery, *see* doc. 39, but Plaintiff did not comply with the November 1st deadline.

the Jail. *Id.* During a search of his cell (on an unidentified date), Plaintiff asked that a Sergeant be present due to the manner in which the search was being carried out. *Id.*, at 7. The search had revealed food that Plaintiff had in his cell, which he stated he had because he was fasting. *Id.* Sergeant Parramore arrived and asked Plaintiff what his religion was and he said "Baptist." *Id.* Defendant allegedly told Plaintiff that only Muslims could fast in the Jail, and Plaintiff said he did not know of such a rule. *Id.*, at 7-8. When Defendant replied that he had a place for Plaintiff's "smart ass," Plaintiff replied with a disrespectful comment. *Id.*, at 8. Defendant responded by asking again about Plaintiff's religion. *Id.*

Plaintiff alleged that Defendant began reading Plaintiff's file out loud, including his criminal charges, and told another officer they had "another racist joining us," referring to Plaintiff. *Id.*, at 8. Plaintiff complained that he felt violated, and Defendant told him that his criminal charges were a public record and he could do as he pleased. *Id.*

On February 19, 2006, Plaintiff alleges that correctional officer Jones came to the cell which Plaintiff shared with another inmate. *Id.*, at 8-9. Plaintiff claims his cell was searched again to harass Plaintiff for filing a grievance. *Id.* 8. When the search was over and the two inmates were directed to go back inside their cell, Plaintiff's cellmate asked the officer if he would throw away their trash. *Id.*, at 9. Plaintiff claims that officer Jones just stood there silently and when Plaintiff tried to put a box in the trash bag in Jones's hand, Jones kicked the box, indirectly kicking Plaintiff in the ankle. *Id.* Plaintiff again requested the presence of a Sergeant and twenty minutes later, Defendant Parramore arrived along with Sergeant Hutcheson. *Id.*

Plaintiff was told to roll up his belongings and he tried to tell Hutcheson that this treatment was retaliation because Defendant Parramore and Officer Jones did not like him.  *Id.*, at 9.  As Plaintiff was talking, Defendant Parramore threatened to "spray" him if he did not stop talking.  *Id.*  Plaintiff reported that he was housed in confinement for six months, as of the day he submitted his amended complaint.  *Id.*

On April 11, 2006, Plaintiff's meal was delivered to his cell by Defendant Parramore.  *Id.*, at 10.  Plaintiff asked for a second cup of tea, which the Defendant denied.  *Id.*  Plaintiff asked why, since all other inmates were given a second cup when requested, and Defendant responded that he "didn't have time to wait . . . ."  *Id.*  Plaintiff then questioned why he was being treated differently; correctional officer Revell pushed on Plaintiff's food flap and Plaintiff's food tray fell on the ground.  *Id.*  Defendant Parramore left to get Plaintiff another tray and told Plaintiff that he better clean up the food before he went to the shower  *Id.*  Plaintiff told Parramore to have the "officer who throw [sic] the food on the floor to clean it up" because he only had twenty minutes to take a shower.  *Id.*, at 10-11.  Defendant then told Plaintiff to roll up his belongings, that he was going back to confinement.  *Id.*, at 11.  Plaintiff alleged that the Defendant intended on keeping Plaintiff in confinement and never letting him out.

Plaintiff alleges violation of his First Amendment rights and claims that Parramore confined him and punished him for fasting in accordance with his religious beliefs.  *Id.*, at 12.  He also alleges a First Amendment violation for retaliation.  *Id.*  Plaintiff seeks compensatory damages as well as punitive and nominal damages.  *Id.*

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). The burden then shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

On February 4, 2006,[2] Defendant Parramore was informed by Correctional Officer Sean Moore that Plaintiff needed to be moved due to his behavior during a shakedown.  Doc. 38, p. 2; *see also* Parramore affidavit (exhibit to doc. 38; doc. 38-2).  Officer Moore told Defendant Parramore that Plaintiff was "cursing and yelling because food previously given to him at mealtime was confiscated and discarded by Officer Kenneth Jones."  Doc. 38, Parramore affidavit, pp. 1-2 (doc. 38-2, pp. 1-2).[3]  The policy at the Leon County Jail is that "an inmate cannot save food from a meal tray to eat later."  *Id.*  Food that is not consumed during mealtime must be discarded.  *Id.*, at 2.

When Defendant Parramore arrived at Pod K and told Plaintiff to gather his belongings, Plaintiff "became very angry and began cursing at" Defendant Parramore.  Doc. 38, Parramore affidavit, p. 2 (doc. 38-2, p. 2); *see also* doc. 38, exhibit to Parramore affidavit (doc. 38-2, p. 7).  Defendant Parramore attempted to explain that if an officer requests that an inmate be moved, "the inmate must be moved."  *Id.*  Plaintiff then attempted to debate his religious practice of fasting.  *Id.*  Since Defendant

---

[2] Defendants identify the first incident as occurring on February 4, 2006.  Doc. 38.  It is a second incident with Officer Jones that Plaintiff alleged took place on February 19, 2006.  Doc. 23, pp. 8-9; doc. 46, pp. 2-3.

[3] Hereafter, all references to exhibits are to those attached to document 38, unless otherwise noted.  References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

Parramore thought that only Muslim inmates "engaged in fasting during certain times for religious reasons, [he] attempted to determine what [Plaintiff] claimed his religion to be." *Id.* Defendant Parramore states that Plaintiff never answered the question, but continued to be "verbally combative" with him. *Id.* "By the time [Plaintiff] finished gathering his belongings, he stated to [Defendant Parramore] that he worships the devil and was a racist." *Id.* Because Plaintiff was so upset, Defendant Parramore stopped talking to him, thinking it might calm him down. *Id.*

Defendant Parramore asked Plaintiff what he was charged with so he could determine where Plaintiff should be housed. *Id.*, at 2. Plaintiff "continued to curse at [Defendant Parramore], telling [him] to figure it out." *Id.* As Defendant Parramore reviewed Plaintiff's classification file, he noted Plaintiff listed his religion as Baptist. *Id.* He told Plaintiff "to write to Chaplain Ted Warmack about his alleged need to 'fast.' " *Id.* Plaintiff then accused Defendant of "telling him how to practice his religion." *Id.*

By the time Plaintiff was placed in Pod G, he had calmed down and wanted to talk. Doc. 38, Parramore affidavit, p. 2 (doc. 38-2, p. 2). When Defendant tried to answer Plaintiff's questions about his need to fast, Plaintiff "again became verbally abusive." *Id.*, at 2-3. Their conversation ended when Plaintiff accused Defendant "of preventing him from worshiping." *Id.*, at 3.

Attached to Defendant Parramore's affidavit are several documents relating to this issue: a memorandum from Defendant to Lieutenant McRae, a memorandum from Defendant to the classification file, and written remarks to Defendant from Plaintiff "apologizing for his comments." *Id.* In the first memorandum, Defendant essentially states what is presented in his affidavit. Doc. 38, exhibit to Parramore affidavit (doc. 38-

2, pp. 4-5).  In the second memorandum to the classification file, Defendant added that Plaintiff demonstrated a "very bad attitude," and after he was moved to Pod G-2, "he was found to have newspapers, magazines, extra clothing and other contraband."  Doc. 38, exhibit to Parramore affidavit (doc. 38-2, p. 7).

As for Plaintiff's claim concerning the incident on May 11, 2006,[4] with the food tray, Defendant has stated in his affidavit that Plaintiff was given a cup of tea and a food tray by Correctional Officer Revell.  Doc. 38, Parramore affidavit, p. 3 (doc. 38-2, p. 2). Plaintiff was "holding the food tray with part of the tray resting in the food flap," and he "began debating the possibility of getting extra tea."  *Id.*  Defendant Parramore "informed [Plaintiff] that he had received his tea and would not get any more."  *Id.* Defendant Parramore instructed Officer Revell "to give one cup of tea per inmate."  Doc. 38, exhibit to McRae affidavit (doc. 38-3, p. 7).  Defendant Parramore "repeatedly instructed him to take his food tray out of the food flap."  Doc. 38, Parramore affidavit, p. 3 (doc. 38-2, p. 3).  Plaintiff did not comply, refusing to move, continuing to debate the issue, and asking Defendant Parramore if he "was going to take his tray."  *Id.*

> With less than an inch of the tray on the food flap, Officer Revel started slowly closing the food flap.  [Plaintiff] began slowly pushing the tray, allowing it to ride up the food flap.  When the flap closed, [Plaintiff] intentionally pulled the tray toward him, causing the food to fall in the doorway. [Plaintiff] then started yelling and complaining that he was not being fed.
>
> At approximately 1900 hours, [Defendant Parramore] gave [Plaintiff] another tray and told him he would have to clean up the mess he made. He refused to do so and told me to clean it up.

---

[4] The memoranda attached to the affidavit reflect this date was April 11, 2006, not May 11th.  Doc. 38, exhibit to Parramore affidavit (doc. 38-2, pp. 9-11).  The date alleged by Plaintiff in the complaint is April 11th and, thus, presumably, this is merely a typographical error in the affidavit.

Doc. 38, Parramore affidavit, p. 3 (doc. 38-2, p. 3).

Attached to Defendant's affidavit is a memorandum written on April 11, 2006, to Plaintiff's Classification File. Doc. 38, exhibit to Parramore affidavit (doc. 38-2, pp.10-11). There, Defendant stated that after the conversation at 1900 hours, Defendant went to talk with Plaintiff for the second time at 1910 hours. Doc. 38, exhibit to Parramore affidavit (doc. 38-2, p. 10). Plaintiff refused once again to clean up the mess and Defendant advised that if he did not clean it up, he would "move to Pod G-2." When Plaintiff stated his refusal, Defendant told "him to gather his belongings so he would be ready to move when time came." *Id.* Plaintiff told Defendant to get his belongings "because he was not." *Id.* Defendant then informed Plaintiff "that if he failed to gather his belongings, we would gather them and place them in Property." *Id.*

Defendant returned at 1950 hours to talk with Plaintiff again. Plaintiff "refused to gather his belongings or commit to cleaning up the spill." *Id.* When Plaintiff had still not packed up his belongings by 2227 hours, Defendant instructed Officer Revell to tell Plaintiff "to gather his belongings because" Defendant Parramore was on his way to move Plaintiff. Doc. 38, exhibit to Parramore affidavit (doc. 38-2, p. 11). When Defendant arrived in Pod H to get Plaintiff at 2230 hours, Plaintiff was "ready to be moved with all of his belongings packed." *Id.* He was escorted to Pod G-2 by Defendant and three other officers without incident. *Id.* Defendant concluded the memorandum by noting that throughout the incident, Plaintiff threatened to "write up" Defendant Parramore, called him names, and encouraged him to shoot Plaintiff with his Taser, telling him "it would not hurt." *Id.* Defendant wrote:

Case No. 4:06cv569-SPM/WCS

> After reviewing [Plaintiff's] file, it is obvious this inmate has no business in any general population pod. His games and refusal to clean his room also indicates he should not be housed in Pod H, rather Pod G where someone can clean up for him. His child like behavior, threats, games and intimidating tactics indicate he belongs housed in Pod G until his release for his protection.

Doc. 38, exhibit to Parramore affidavit (doc. 38-2, p.11).

As further evidence related to the April 11th incident, Defendant provided the affidavit of Daniel McRae. Doc. 38, exhibit (doc. 38-3). Mr. McRae reviewed a grievance that Plaintiff wrote concerning this matter and, after investigation, determined Plaintiff's grievance was "unfounded." *Id.*, at pp. 1-2. The memorandum Mr. McRae wrote on April 15, 2006, states that Plaintiff "tried to provoke [Defendant] Parramore by purposely not cooperating while receiving his meal." Doc. 38, exhibit to McRae affidavit (doc. 38-3, p. 3).

Also presented is a memorandum from Officer Revell dated April 11, 2006, which states that after Plaintiff asked for more tea, Officer Revell told Plaintiff that he "was still feeding up and could not give him any more at [that] time." Doc. 38, exhibit to McRae affidavit (doc. 38-3, p. 8). Plaintiff "continued to ask for more tea and would not move his tray." *Id.* Both [Defendant] Parramore and Officer Revell gave Plaintiff several orders to take his tray, but Plaintiff ultimately "dropped his tray on the floor." *Id.* Defendant Parramore "returned several minutes later with another tray" for Plaintiff. *Id.*

Defendant also submitted the affidavit of Raymond Hatchman, a correctional officer at the Jail. Doc. 38, exhibit (doc. 38-4). In Hatchman's affidavit he stated that "[o]n April 11, 2006 at approximately 2300 hours, [Plaintiff] stated to me that he tried to

provoke [Defendant] Parramore to some type of action against him by being "cocky." *Id.*

Finally, Defendant presented an affidavit with an attached memorandum from Captain Kim Peterson, who reviewed Plaintiff's grievance concerning the April 11th incident.  Doc. 38, exhibit (doc. 38-5).  That memorandum provides additional information in support of Defendant's version of the facts.  *Id.*  Noteworthy is that Plaintiff failed to comply with an order and failed to clean up the mess he created when he spilled his food tray.  Doc. 38, exhibit (doc. 38-5, p. 3).  Plaintiff challenged how many times Defendant told him to clean up the food spill, but it was clear that Plaintiff refused an order.  The memorandum also makes clear that Plaintiff was never denied food or drink and that "one meal tray and one drink" is the correct procedure at the Jail. *Id.*  The memorandum explains that Captain Peterson discovered that Officer Revell had "been giving out a second drink to inmates when they requested it in the confinement pod."  Doc. 38, exhibit (doc. 38-5, pp. 3-4).  "He didn't think it would be a problem because there are usually left over beverage."  *Id.*, at 4.  "Officer Revell is a new employee and has since been retrained regarding the proper procedure." *Id.*  The memorandum concludes Plaintiff's behavior warranted his movement to Pod G and he was not denied food or beverage.  *Id.*

Plaintiff responded to Defendant's summary judgment motion with an "answer" that is sworn under penalty of perjury.[5]  Doc. 46.  Plaintiff avers that he was placed in

---

[5] To the degree Plaintiff attempts to provide facts not relevant to this case, and argues conclusory points of law, those statements are not considered.  An affidavit is "based on personal knowledge" and must set out facts.  Plaintiff's argument of the law is not a factual statement.

administrative segregation by Defendant "due to his dislikes towards Plaintiff and had the desire to punish Plaintiff for past misconduct . . . ."  Doc. 46, p. 2.  Plaintiff contends he was put in confinement without a hearing and solely at the Defendant's discretion.  *Id.*  Plaintiff further states Defendant confined him "to satisfy his personal vindictiveness by confining Plaintiff for a indefinite period of time."  *Id.*  Plaintiff states he was in "Segregation J and G-pod from February 19, 2006, to August 2006 which exceeds" the Florida Jail Model Standards.  *Id.*, at 2-3.

As to the April incident, Plaintiff states that Defendant "intentionally provoked Plaintiff by allowing his officer to intentionally push Plaintiff's evening meal off of the food flap to cause a mess of food inside of Plaintiff's room."  Doc.46, pp. 3-4.  Plaintiff alleges that Defendant gave him a verbal order "to clean up the mess but denied Plaintiff the right to cleaning supplies to be in compliance with verbal orders."  *Id.*, at 4.

Plaintiff further states in his affidavit that when he was transferred to Pod G-2 confinement, he lived in "severe conditions" but Plaintiff does not explain those conditions except to contend that Jail inmates who "were not certified in cleaning human waste " were to clean the Pod, but failed to provide a humane environment.  *Id.*, at 4.  Plaintiff also avers that he was denied the right to be heard before being placed in Pod G-2.  *Id.*  Plaintiff states that Defendant "had already planed [sic] the plot in transferring Plaintiff to G-2 confinement" on April 11, 2006.  *Id.*

**Analysis**

Plaintiff's amended complaint raised only two claims:  count one was for retaliation and count two was for violating his rights to practice his religion.  Doc. 23, p. 12.  Each of the claims will be considered in turn.

**First Amendment - religion claim**

The First Amendment, made applicable to the States through the Fourteenth Amendment, "safeguards the free exercise of [one's] chosen form of religion." Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). Prisoners do retain their First Amendment rights, including the First Amendment right of free exercise of religion. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*). However, prison regulations or policies which infringe upon an inmate's constitutional rights are judged under a 'reasonableness' test. O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (holding that the Turner v. Safley standard of review is applicable to claims that an inmate's free exercise rights have been violated).[6] Courts must give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prisons or jails. O'Lone, 482 U.S. at 350, 107 S.Ct. at 2405.

Under the Turner standard of review, courts must uphold prison regulations if they are "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 350, *using the standard of* Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Accordingly, "[a] prison regulation, even though it infringes the inmate's

---

[6] In City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 1997), the Court held that the Religious Freedom Restoration Act, (RFRA), 42 U.S.C. § 2000bb, *et seq.*, was unconstitutional as exceeding Congress's authority under the Constitution. That decision required returning to the standard of review employed in Employment Div., Dept. of Human Resources v. Smith, 494 U.S. 872 (1990), and in the context of prison cases, O'Lone v. Shabazz, *supra*.

constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532 U.S. 932 (2001) (holding that the Department of Corrections policy to not permit a "dual-name" on inmate identification card violated inmate's right to the free exercise of religion by denying him his Muslim identity and was unreasonable under Turner).

In this case, Plaintiff has provided no evidence that his First Amendment right to exercise his religious beliefs was either burdened or violated. The undisputed evidence presented here shows that Plaintiff told Defendant he was fasting. Accepting that Plaintiff has a sincerely held religious belief to fast, there is no evidence that he complied with the direction to seek assistance from the Chaplain in carrying out that belief. The challenged policy of the Jail (that no food can be kept in one's cell) does not infringe upon a desire to fast. The Defendant did not tell Plaintiff he had to eat, and Plaintiff was not forced to eat. Plaintiff has not shown that he was precluded from exercising his belief of fasting.

Construing Plaintiff's claim liberally, it *could be* that Plaintiff is challenging the fact that he was not able to save food in his cell and claims that *that* burdens his religious belief in fasting. However, Plaintiff has not shown that he exhausted administrative remedies as to this claim as required by 42 U.S.C. § 1997. If Plaintiff's belief required him to fast during certain hours such that he wanted food available to him at a different hour, Plaintiff could have sought assistance from the Chaplain. Plaintiff did not submit grievances, at least on this record, showing that he grieved *this* issue and sought assistance in eating at a later time. Moreover, such a claim cannot be brought against Defendant Parramore as this officer is not alleged to have created the policy. This claim

cannot proceed as to Defendant Parramore.  Finally, it appears that a regulation which prohibits food from being stored or kept in one's cell is reasonable in light of health and sanitary concerns.  Thus, on this record, there has been no showing that Plaintiff's religious beliefs were violated.  Summary judgment should be granted to the Defendant on this claim.

### First Amendment - retaliation claim

This claim, construed liberally, consists of three separate incidents - the transfer from Pod-K to confinement Pod G-2 on February 4, 2006, a transfer again on February 19, 2006, from Pod-I, and the third transfer on April 11, 2006, from Pod H.  Doc. 23, pp. 7-10.

"It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights." Pate v. Peel, 256 F.Supp.2d 1326, 1336 (N.D. Fla. 2003), *citing* Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.1997); Wright v. Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986).  Prison officials may not infringe on an inmate's First Amendment right to petition the government for a redress of his grievances with a practice that is "not reasonably related to legitimate penological objectives" or take certain actions "with the intent of chilling that First Amendment right."  Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995), *citing* Turner v. Safley, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989); *see also* Pate, 256 F.Supp.2d at 1336.  Retaliation in the prison setting may be established by demonstrating that a prison official took adverse actions against

an inmate because he filed a grievance.  *See* Farrow, 320 F.3d at 1248; Pate, 256 F.Supp.2d at 1336.

A prisoner may not rely on a general attack upon a defendant's motivation, but must produce "affirmative evidence" of retaliation.  Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).  This requirement for such evidence exists because of "the ease with which claims of retaliation may be fabricated" by inmates and the "near inevitability" that prisoners will take exception with the decisions of prison officials.  Pate, 256 F.Supp.2d at 1336-37, *citing* Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir.2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  Nevertheless, a prisoner will not be held to a heightened burden of proof.  Crawford-El, 523 U.S. at 580-86, 118 S.Ct. 1584 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives).

The *Mount Healthy* and *Pickering* decisions guide analysis of a First Amendment retaliation claim even in the prison context.  Pate, 256 F.Supp.2d at 1339; *relying on* Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also* Osterback v. Kemp, 300 F.Supp.2d 1238, 1251 (N.D. Fla. 2003).  Although the framework was established in the employment context, it is beneficial to maintain uniformity in these types of cases.  The employment four-step analysis is reduced to a three-step analytical framework, but continues to provide a workable standard to guide all retaliation cases.  This framework, derived in large part

from the Sixth Circuit's opinion in Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999), will be applied in evaluating Plaintiff's retaliation claim against Defendant Parramore.[7] Osterback, 300 F.Supp.2d at 1252; Pate, 256 F.Supp.2d at 1337-38.  Thus, Plaintiff must demonstrate (1) that he engaged in protected First Amendment activity, (2) suffered an adverse action because of that activity, and (3) show a causal connection between the two.  If Plaintiff comes forward with such evidence, the burden shifts to the Defendant to prove that he would have taken the same actions anyway for legitimate reasons.  Since this is Defendant's motion for summary judgment, however, and Plaintiff has the ultimate burden of proof, Defendant need only point to evidence as to the legitimate reason and Plaintiff must show that there is a genuine dispute of material fact concerning Defendant's defense.  *See* Osterback, 300 F.Supp.2d at 1254.

---

[7] As this court held in Osterback v. Kemp:

> Two other circuits have applied the *Pickering* and *Mount Healthy* test to First Amendment claims of retaliation in the prison setting.  Rauser v. Horn, 241 F.3d 330, 333-334 (3d Cir. 2001); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998); Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996).  The Sixth Circuit still follows Thaddeus-X. Bell v. Johnson, 308 F.3d 594, 609 (6th Cir. 2002).  Two other circuits have not adopted a burden-shifting framework, but use a more stringent "but for" analysis.  *See* Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (requiring prisoner to "prove that 'but for' the retaliatory motive, the incidents" which he claims were retaliatory "would not have taken place."); Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993), *cert. denied* 512 U.S. 1209, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994) (declining to use Mount Healthy analysis in retaliatory transfer case and applying the more stringent "but for" test; "prisoner must prove that retaliation was the actual motivating factor for the transfer.").  The Eleventh Circuit, however, has rejected this "but for" standard for Plaintiff's proof, as noted above, so these decision are not persuasive.

Osterback v. Kemp, 300 F.Supp.2d 1253-54.  Indeed, in Osterback, it was noted that in an unpublished opinion, the Eleventh Circuit used this simplified analytical framework in considering a prisoner's claim of retaliation.  *Id.; see also* Texas v. Lesage, 528 U.S. 18, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999) (using the *Mount Healthy* framework in considering a § 1983 equal protection claim).

Defendant has demonstrated with evidence on this record that in each of Plaintiff's transfers, he was moved because he was either creating a disturbance or refused to comply with orders. In particular, as to the first transfer, Defendant Parramore was not the Jail official who *directed* Plaintiff's transfer. That was done by Officer Sean Moore and Defendant Parramore only came to escort Plaintiff to a new housing location. At any rate, the evidence shows the transfer was because Plaintiff was found with food in his cell. There is no dispute that Plaintiff had food in his cell and, thus, Plaintiff's transfer was for a legitimate reason. Plaintiff has not come forward with evidence showing there is a genuine dispute as to this claim. Plaintiff's retaliation claim as to this transfer must fail.

There is some confusion concerning Plaintiff's second claim of retaliation, the transfer alleged to have occurred on February 19, 2006. Plaintiff presented this as a discrete claim in the amended complaint, doc. 23, pp. 8-9, and attached to his amended complaint was a memorandum to the Classification File from Sergeant Hutcheson concerning this event. Doc. 23, p. 37. The event was not directly challenged by Defendant Parramore. Nevertheless, the claim presents Plaintiff's interaction with Officer Jones and a confrontation between those two officers. Doc. 23, pp. 8-9. Plaintiff requested that the Sergeant be called, and Defendant Jones called Defendant Sergeant Parramore and Sergeant Hutcheson. As soon as they arrived, Hutcheson told Plaintiff to pack his belongings. *Id.*, at 9. Plaintiff alleged it was retaliation by Defendant Parramore, but Defendant Parramore's only involvement, as alleged by Plaintiff, was in then telling Plaintiff he would be sprayed if he wouldn't "be quiet." *Id.*

The memorandum attached to the amended complaint provides additional facts, stating Officer Jones advised that Plaintiff "was cursing and threatening to batter him." Doc. 23, p. 37.  While escorting Plaintiff out of Pod I, Defendant Parramore told Plaintiff twice to pull his pants up, and at numerous times, told him to quit trying to discuss the matter.  *Id.*  "At one point Sgt. Parramore had to tell [Plaintiff] that he would be sprayed with O.C. Foam if he continued to stop and try to argue with us."  *Id.*  There is no evidence in these facts that Plaintiff's transfer was due to retaliation.  Instead, the transfer was directed due to Plaintiff's conduct and, similar to the first transfer, it was not directed by Defendant Parramore.  Again, Defendant Parramore only escorted Plaintiff to a new housing area.

The evidence as to the third transfer to confinement Pod G is that Plaintiff refused to comply with an order to clean up the mess made when his tray fell.  In Plaintiff's affidavit, he states for the first time that he was not given cleaning supplies. Doc. 46, p. 4.  That is not sufficient to create a genuine dispute of fact because Plaintiff does not provide evidence refuting that he refused to clean up the mess.  Defendant's evidence is that on numerous occasions Plaintiff was directed to clean up the mess and he did not do so.  Plaintiff has not come forward with evidence to refute each of those instances.  Further, one does not need cleaning supplies to try to pick up at least a portion of the spilled food.  Thus, Plaintiff's transfer has been shown by Defendant to be warranted based on Plaintiff's refusal to comply with an order.

Plaintiff has not met his burden in showing a triable First Amendment retaliation claim.  Plaintiff has not shown any connection to his having engaged in protected First Amendment activities and the conduct of the Defendant.  Plaintiff has not shown that

the transfers were to punish Plaintiff for writing grievances and not because of his own behavior in violating Jail regulations and his failure to comply with orders. There is not a genuine dispute of material fact on this claim. Plaintiff has failed to come forward with sufficient evidence showing that he was subjected to adverse consequences because of protected First Amendment activity.

As an additional comment, Plaintiff was moved to Pod-G on three occasions. Thus, it is clear from the evidence, and even from Plaintiff's own allegations in the amended complaint, that he was not continuously in segregation (Pod G) during the entire period as claimed by Plaintiff. Plaintiff's complaint is internally inconsistent with his allegations.

Finally, Plaintiff did not raise due process claims in his amended complaint, doc. 23, but only First Amendment claims for retaliation and interference with the exercise of his religious beliefs. However, he has attempted to also include at the summary judgment stage of litigation a due process claim concerning his being placed in confinement without a hearing and at the Defendant's discretion. Doc. 46. This claim is not part of this litigation and cannot be considered on the merits.

**28 U.S.C. § 1915**

This court may dismiss an action at any time that has been found to be either frivolous or malicious, or both. 28 U.S.C. § 1915(2)(B)(ii). Such a dismissal counts as a strike for purposes of § 1915(g).

It is undisputed that this action is both frivolous and malicious. The controversies were trivial and trumped up by Plaintiff to harass Defendant Parramore. Plaintiff filed and litigated this frivolous suit for a malicious purpose, and the court should so find.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 38, be **GRANTED** as to all of Plaintiff's claims, that judgment be **ENTERED** in Defendant's favor, and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was found to have been frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

**IN CHAMBERS** at Tallahassee, Florida, on September 19, 2008.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**